IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE ELDRIDGE, AIS 184272, | : | |
| Petitioner, | : | |
| vs. | : | CA 15-0197-CG-C |
| JEFF DUNN, etc., et al., | : | |
| Respondents. | | |

**REPORT AND RECOMMENDATION**

Willie Eldridge, a state prisoner presently housed at Ventress Correctional Facility in Clayton, Alabama (*see* Doc. 20, at 15), has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Eldridge is challenging the continuing validity of the 19-year sentence he began serving on October 30, 1995, for first-degree assault in the Circuit Court of Marengo County, Alabama, on the basis that he was erroneously released from jail in Georgia, through no fault of his own, and, therefore, the entire time he was at liberty because of the erroneous release, over 10 years, should be credited as time served and he should be released from prison. (*Compare* Doc. 1 *with* Doc. 20.) Eldridge raised this issue in the state courts of Alabama, via a petition for writ of habeas corpus filed in the Circuit Court of Montgomery County, Alabama on October 10, 2013. (Doc. 19, Exhibit A, at 4.) The trial court summarily dismissed the petition on January 21, 2014 (*id.* at 61), and the Alabama Court of Criminal Appeals affirmed the dismissal of the petition by memorandum opinion dated August 22, 2014 (*see, e.g.,* Doc. 19, Exhibit B, at 247-250). Eldridge's application for rehearing was overruled on September 19, 2014 (*id.* at 278) and his petition for writ of certiorari to the Alabama Supreme Court was denied on November 14, 2014 (Doc. 19, Exhibit C, at 29).

In his petition before this Court, filed April 7, 2015 (Doc. 1, at 15), Eldridge raises the following issues which he claims entitle him to federal habeas corpus relief: (1) he is being restrained of his liberty in violation of the Fourteenth Amendment to the United States Constitution by virtue of being deprived of "credit via 'dead-time' without any form of procedural or substantive due process prior to the deprivation occurring[]" (Doc. 1, at 29); (2) the Alabama courts' denial of over ten years of credit under the "credit-for-time-at-liberty doctrine" constitutes a deprivation of his Fourteenth Amendment rights (*id.* at 33); and (3) "the inaction of Alabama authorities to seek to reclaim or re[-]apprehend" him constitutes "gross negligence and [] a waiver of jurisdiction under Circuit law, which is required by . . . the 14th Amendment of the United States Constitution" (*id.* at 37).

This cause is before the Court on the petition (Doc. 1), respondent's answer with attachments (*see* Doc. 8), respondent's court-ordered expansion of the record (Doc. 19, Exhibits A-C), and petitioner's reply (Doc. 20). A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## FINDINGS OF FACT

On October 30, 1995, in the Circuit Court of Marengo County, Alabama, Eldridge was sentenced to a 19-year term of imprisonment on one count of first-degree assault. (*Compare* Doc. 1, at 1 (petitioner's allegations that he received a 19-year term of imprisonment on or about October 30, 1995) & Doc. 19, Exhibit A, at 33, Affidavit of Alcornelia Terry ("Willie Eldridge . . . was sentenced to 19 years with 545 days of jail credit on case CC-94-138 [] with a sentence date of October 30, 1995[,] as certified by the Marengo County Circuit Court Clerk.").)[1] Petitioner escaped from the Childersburg Community Work Center on December 9, 1999 (*see id.*, Terry aff.; *see also id.* at 7 (in petitioner's writ of habeas corpus, filed in the Montgomery County Circuit Court, he avers he "did not return from his work release job" on December 9, 1999)), and five days later, on December 14, 1999, a fugitive warrant for Eldridge's arrest was executed by then Commissioner of the Alabama Department of Corrections Michael W. Haley (Doc. 19, Exhibit A, at 40, FUGITIVE WARRANT). In addition, on January 4, 2000, the District Court of Talladega County, Alabama issued a warrant for Eldridge's arrest on one count of second-degree escape. (Doc. 19, Exhibit A, at 86-87, WARRANT & COMPLAINT.)

On February 7, 2003, Eldridge was arrested in Fulton County, Georgia on charges unrelated to his escape and because Alabama authorities received information of petitioner's arrest, this date is reflected in Alabama DOC paperwork as Eldridge's

---

[1] A description of this assault is contained in the Classification Summary supplied to this Court by Eldridge: "S [Eldridge] is serving remainder of 19 year sentence for Assault I. PSI in file details Subject (S) tried to provoke a male as the MV returned to his car that was occupied by a female passenger. The V refused to engage the S and started to drive away. S fired a shot into the vehicle. The shot struck the V in the head causing serious injury." (Doc. 20, Exhibit B.)

3

recapture date. (*Compare* Doc. 19, Exhibit B, August 22, 2014 Memorandum, at 1-2 *with* Doc. 19, Exhibit A, at 31, Inmate Summary as of October 24, 2013 (reflecting a recapture date of February 7, 2003).) At the time of his arrest during a traffic stop in Fulton County, Georgia on February 7, 2003, Eldridge "had warrants in GA for Obstruction of Justice, Cruelty to Children II (FVA) and Burglary." (Doc. 20, Exhibit B, CLASSIFICATON SUMMARY.) Officials in Fulton County, Georgia released petitioner on the charges pending against him in Georgia within days of his arrest. (*See* Doc. 20, Exhibit A, Affidavit of Willie Eldridge, at ¶ 1 ("I was released from Fulton County Georgia custody within several days and less than one week of my arrest there on February 7th, 2003."); *compare id. with* Doc. 20, Exhibit B).) On February 10, 2003, Alabama Department of Corrections Commissioner Donal Campbell sent a letter addressed to the Fulton County Jail requesting that Georgia officials use the fugitive warrant (issued on December 14, 1999) to hold Eldridge pending his extradition to Alabama (Doc. 19, Exhibit A, at 38-41). It is apparent from the record, however, that Eldridge was released on the charges pending in Georgia before the fugitive warrant reached the Fulton County Jail inasmuch as Eldridge alleges he was released from jail within days of his arrest and remained at liberty until on or about May 25, 2013 when Georgia officials in Fulton County again arrested him. (*See* Doc. 1, at 18.) This time, Georgia officials held Eldridge on the fugitive warrant (or the arrest warrant issued by Talladega County) until his return to the Alabama Department of Corrections on June 12, 2013. (*Compare id. with* Doc. 19, Exhibit A, Terry aff., at 33 ("He was returned to Alabama on June 12, 2013.").)[2]

---

[2] The Inmate Search Results that petitioner likes to point to as establishing a release date of April 29, 2013 was generated on June 5, 2013 (*see* Doc. 19, Exhibit A, at 19; *compare id. with* Doc. 1, at 40 (same)), one week prior to his return to Alabama. And, once (Continued)

Some four months after petitioner's return to Alabama, that is, on October 10, 2013,[3] he filed a petition for writ of habeas corpus in the Circuit Court of Montgomery County, Alabama, therein effectively raising the first and third issues he asserts in the instant habeas corpus petition. (*See* Doc. 19, Exhibit A, at 4 & 6-17.) The State filed a motion for summary judgment on November 20, 2013 (*id.* at 26-50), as did the petitioner (*id.* at 51-53), and, on January 21, 2014, Circuit Judge William A. Shashy granted the State's motion for summary judgment and summarily dismissed Eldridge's petition for writ of habeas corpus (*id.* at 61 (two-paragraph order of dismissal); *compare id. with* Doc. 19, Exhibit B, August 22, 2014 Memorandum Opinion, at 1 ("Willie Eldridge . . . appeals the summary dismissal of his petition for a writ of habeas corpus[.]")). The Alabama Court of Criminal Appeals affirmed the summary dismissal of Eldridge's habeas corpus petition by unpublished memorandum opinion issued on August 22, 2014. (Doc. 19, Exhibit B, at 247-250.)

---

returned, Alabama prison officials generated other paperwork reflecting a minimum release date of November 2, 2026, based upon petitioner's escape date of December 9, 1999 and his return date to Alabama of June 12, 2013, a period of exactly 13 years, 6 months, and 3 days (that is, from escape to return and about forty days shy of this amount—to petitioner's "good"—from his return to his minimum release date of November 2, 2026). Of course, had Eldridge not escaped in the first place on December 9, 1999, his end-of-sentence date would have been April 29, 2013, as reflected on all of his prison records generated prior to his return date of June 12, 2013 (*see, e.g.,* Doc. 19, Exhibit B, at 33 (inmate summary as of December 10, 1999 reflected a minimum release date of April 29, 2013)). This recognition simply brings the undersigned full circle to the pivotal issue in this case of whether petitioner is being restrained of his liberty in violation of the Fourteenth Amendment by being held after his sentence expired.

[3]   Three days prior to the filing of his habeas corpus petition, that is, on October 7, 2013, the Director of Records of the Alabama Department of Corrections, Mark S. Burton, served Eldridge with the arrest warrant issued from Talladega County on the escape charge back in early 2000. (*See* Doc. 19, Exhibit A, at 86.) Ultimately, on or about March 6, 2014, the second-degree escape charged lodged against petitioner was dismissed on motion of the State. (*See* Doc. 1, at 41 (Felony Order of dismissal signed by Talladega County District Judge M. Ryan Rumsey).)

The record indicates that Eldridge was convicted of first-degree assault and was sentenced to 19 years' imprisonment with 545 days of jail credit . . . and a start date for the sentence of October 30, 1995. It also indicates that Eldridge escaped from Childersburg Community Work Center on December 9, 1999; that he was recaptured on February 7, 2003, in Fulton County, Georgia; and that he was returned to Alabama on June 12, 2013. Upon return, Eldridge resumed serving his original sentence and was given a "dead time"[4] balance of 13 years, 6 months, and 3 days, with a minimum release date of November 2, 2026.

In his petition, Eldridge claimed that he was being held beyond the expiration of his sentence. The Department moved to dismiss Eldridge's petition. In support of its motion for summary judgment, the Department attached the affidavit of Mark Bruton, its director of correctional records, which indicated, in pertinent part:

> This is to certify that Willie Eldridge, AIS #184272, was sentenced to 19 years with 545 days of jail credit on case CC-94-138 . . . with a sentence date of October 30, 1995 as certified by the Marengo County Circuit Court Clerk.
>
> Inmate Eldridge escaped from the Childersburg Community Work Center on December 9, 1999 and was recaptured in Fulton County Georgia Sheriff['s] office in Atlanta, Georgia on February 7, 2003 . . . . A Fugitive Warrant was sent February 10, 2003, to the Fulton County Jail on Inmate Eldridge . . . . He was returned to Alabama on June 12, 2013. Pursuant to Code of Alabama § 15-18-6, inmate Eldridge is not entitled to credit for time served from his escape date of December 9, 1999 until he was returned to Alabama on June 12, 2013. Inmate Eldridge h[as] a release date [of] November 2, 2026.

The circuit court granted the Department's motion for summary judgment on January 21, 2014.

On appeal, Eldridge argues that the circuit court erred by granting summary judgment because, he says, his sentence has "expired." Eldridge specifically argues that he should receive "dead time" credits toward his Alabama sentence while he was briefly confined and then living freely in the State of Georgia. We disagree.

> A petition for writ of habeas corpus is the proper method by which to test whether the State has correctly

---

[4] "Administrative Reg. No. 437 provides that 'dead time' includes '[d]ates of escapes and recapture date or return date if out of state." (Doc. 19, Exhibit B, at 248 n.1.)

> calculated the time an inmate must serve in prison. We assume DOC's calculations are correct unless there is some proof to the contrary.

In Eldridge's case, the Department calculated a "dead time" balance of 13 years, six months, and three days, with a minimum release date of November 2, 2026, due to his escape in 1999. Administrative Reg. No. 437 provides that "dead time" includes "[d]ates of escapes and recapture date or return date if out of state." In his brief, Eldridge admits that he was arrested by Georgia officials for an "unrelated offense" before he was returned to the Department's custody on June 12, 2013. It is well settled, however, that where an inmate escapes from custody following conviction, he or she would not be entitled to credit for time spent incarcerated outside the State of Alabama. See § 15-18-6, Ala. Code 1975 ("An escapee from a state penal institution who is recaptured and returned to custody shall be credited with all of his actual time spent incarcerated within the State of Alabama prior to his transfer and return to the custody of [Department] of Corrections."); See also Boutwell v. Nagle, 861 F.2d 1530 (11th Cir. 1988). Our review of the record indicates that the Department correctly applied "dead time" while calculating Eldridge's sentence. Furthermore, Eldridge's claim that his Alabama sentence "expired" on April 29, 2013, is without merit. Eldridge was sentenced on October 30, 1995, to 19 years' imprisonment with 545 days of jail credit. It is undisputed that Eldridge escaped from custody following his conviction. Also, as noted below, the Department lodged two detainers against Eldridge. Therefore, the circuit court properly denied his habeas petition.

Additionally, Eldridge argues that the Department failed to secure a detainer against him following his arrest in Fulton County, Georgia, which, he says, caused his "erroneous" release and allowed him to remain "at liberty" until his recapture. In his brief, Eldridge claims that he was arrested by the Fulton County Sheriff's Office on February 7, 2003, and subsequently released from custody; that on February 10, 2003, the Department sent a fugitive warrant to officials in Fulton County, Georgia; and that he lived freely in the State of Georgia until his involvement in an automobile accident on May 25, 2013, at which time it was discovered that Eldridge had an arrest warrant for escape. Indeed, the record indicates that on February 10, 2003, after Eldridge's recapture, the Department forwarded a fugitive warrant to officials in Fulton County, Georgia, requesting that they be notified at least 30 days before the date of release so that the Department could extradite him. Also, the Department issued a fugitive warrant on December 14, 1999, addressed to "any peace officer," as well as a subsequent escape warrant, according to Eldridge, issued in Talladega County, Alabama. Clearly, the record refutes Eldridge's claim.

Based on the above, the judgment of the circuit court is affirmed.

(*Id.* at 247-250 (some internal quotation marks and citations omitted; footnote retained).) Eldridge's application for rehearing was overruled by the Alabama Court of Criminal Appeals on September 19, 2014 (*id.* at 278) and his petition for writ of certiorari to the Alabama Supreme Court was denied on November 14, 2014 (Doc. 19, Exhibit C, at 29).

## CONCLUSIONS OF LAW

A.  **Merits Review of Eldridge's Claims**.

In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Cox v. McNeil*, 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker*, ___ U.S. ___, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary, Department of Corrections*, 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[5]), *cert. denied*, ___ U.S. ___, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).[6]

---

[5]  As amended, § 2254 now provides:

   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with
(Continued)

8

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).

> "A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227, 1247 (11th Cir. 2009) . . . . A state court decision involves an unreasonable application of

---

> respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

[6] The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

9

> federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections*, 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied*, 562 U.S. 1203, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011).

The undersigned recommends that the Court find in this case that Eldridge cannot establish his entitlement to relief under § 2254(d)(1).[7] First, petitioner has not and cannot show, under the "contrary to" clause, that the Alabama Court of Criminal Appeals arrived at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Moreover, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama Court of Criminal Appeals, though recognizing the correct governing principle from the Supreme Court's decisions, unreasonably applied that principle to the facts in this case. The source of the petitioner's inability to establish either § 2254(d)(1) clause is his failure to establish that Federal law, as determined by the Supreme Court, is at all relevant to the issues in this case, much less that the decision of the Alabama Court of Criminal Appeals in this instance was either contrary to that law or involved an unreasonable application of that law. In fact, the undersigned

---

[7] As reflected in footnotes 8 & 9, *infra*, the Alabama Court of Criminal Appeals' adjudication of petitioner's "credit for time spent at liberty" claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, as is necessary for relief under § 2254(d)(2).

can draw no other conclusion but that without the aid of Alabama law, specifically that an inmate erroneously released from prison through no fault of his own is entitled to credit for the time he spent at liberty following that erroneous release, *see, e.g., Capers v. State,* 646 So.2d 688 (Ala. Crim. App. 1993) ("This court in *McCall v. State,* 594 So.2d 733 (Ala.Crim.App. 1992), held that a defendant is entitled to habeas corpus relief if the court determines 'that he was erroneously released, that his release occurred through no fault of his own, and that he had not been given credit for the time he spent at liberty on that erroneous release.'"); *McCall v. State,* 594 So.2d 733, 734 (Ala. Crim. App. 1992) ("McCall did make factual allegations that[,] taken as true, would entitle him to habeas corpus relief: that he was erroneously released, that his release occurred through no fault of his own, and that he had not been given credit for the time he spent at liberty on that erroneous release."), Eldridge has no possibility of showing that he is entitled to the habeas corpus relief he seeks in this Court, *compare Boutwell v. Nagle,* 861 F.2d 1530, 1532 (11th Cir. 1988) ("In *Palmer v. Dugger,* 833 F.2d 253 (11th Cir. 1987), this court stated, '[a]s a general rule, a state prisoner has no federal constitutional right to credit for time served prior to sentence absent a state statute granting such credit.' . . . If, absent a state statute, a prisoner has no right to credit for time served before he or she has been convicted, then without a statute the prisoner certainly has no right to credit for time spent in out-of-state custody while he or she is an escapee from the state's prison system. Alabama has no statute granting Boutwell credit for the time he spent in jail in Washington before he was returned to Alabama's custody. . . . [Moreover,] [t]o credit Boutwell's Alabama sentence for time spent in out-of-state custody while challenging extradition, in effect, would allow Boutwell to choose the state of his incarceration for the period of time during which his extradition challenge was pending. Petitioner has no constitutional right to do so."), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2452, 104 L.Ed.2d

1006 (1989), *with Carrizales v. Wainwright,* 699 F.2d 1053, 1054-1055 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes.") and *Rodak v. Secretary, Dept. of Corrections,* 2013 WL 4780132, *6 (N.D. Fla. Sept. 5, 2013) ("A habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. . . . A federal writ of habeas corpus is only available in cases of federal constitutional error."). Simply put, petitioner cannot show that he has a federal constitutional right, as established by the Supreme Court, to be credited for the time he spent in the free world (at "liberty") as the result of what the record in this case establishes (and petitioner backhandedly admits) was an admitted escape form the Childersburg Community Work Center on December 9, 1999. Regardless of the record notation that Eldridge was recaptured on February 7, 2003[8] and, thereafter, that he was released by Georgia authorities to live in the free world for another ten plus years,[9] or the State of Alabama's ultimate failure to prosecute him for

---

[8] The record clearly establishes that Eldridge escaped from the work release facility he was housed in on December 9, 1999, and that he remained at liberty for over three years before his arrest by Georgia authorities on unrelated Georgia charges on February 7, 2003. Accordingly, the Alabama Court of Criminal Appeals was absolutely correct in implicitly recognizing that Eldridge would not be entitled to credit for that three plus year period of time he was at liberty since the source of his liberty was not an erroneous release by Alabama prison officials but, instead, his own willful escape. *See Anderson v. State,* 710 So.2d 491, 493 (Ala.Crim.App. 1997) ("'Where . . . the defendant has secured his liberty through some illegal or void means, or where he has been instrumental in obtaining the release for his own benefit, the release *has been treated as an escape and credit for time at liberty has not been granted.*" (emphasis supplied)). Accordingly, recognition of these facts—without need to consider the circumstances of petitioner's release by Georgia a few days after February 7, 2003—conclusively establishes that Eldridge's 19-year (straight time) first-degree assault sentence could not have expired on April 29, 2013. Under this "best case" scenario for Eldridge, his end-of-sentence date would be late June of 2016, thereby making clear the speciousness of petitioner's argument that he is being held beyond the expiration of his sentence. As pointed out in footnote 9, however, there exists no viable "best case" scenario for Eldridge.

[9] Again, the record clearly establishes that Eldridge was arrested in Fulton County, Georgia on February 7, 2003 on the basis of Georgia charges unrelated to petitioner's escape on
(Continued)

that escape,[10] it is clear to this Court that Eldridge must serve the remainder of his valid 1995 first-degree assault sentence inasmuch as he served only 4 years and 40 days of his

---

the first-degree assault sentence. It is also clear, by petitioner's own words, that Georgia authorities released him within days of his arrest. And, this Court, as did the Alabama Court of Criminal Appeals, certainly can discern from the record that on February 10, 2003, Alabama DOC Commissioner Donal Campbell sent a letter to Fulton County, Georgia officials requesting that Georgia officials utilize the fugitive warrant attached to his letter (and issued on December 14, 1999) to hold petitioner pending his extradition to Alabama. Eldridge then speculates (as he has no proof), and invites this Court to speculate, that Alabama and Georgia authorities negligently failed to ensure his detention and erroneously released him within days of his arrest on February 7, 2003, through no fault of his own, all in order to claim that he is at least entitled to credit for the 10 plus years he remained at liberty (until May 25, 2013) following his release in February of 2003. However, the undersigned has no occasion to speculate inasmuch as Eldridge's admission that he was released within days of his arrest establishes, to the undersigned's satisfaction, that Georgia authorities released Eldridge on the Georgia charges before they received Commissioner Campbell's February 10, 2003 letter request and the attached fugitive warrant. And because Eldridge offers no proof that Georgia authorities released him despite knowing about the fugitive warrant and despite specific information he supplied that he had escaped from the custody of the Alabama DOC some three plus years earlier, a mere four years and 40 days into a 19-year straight time sentence, he simply cannot establish that the subject release has any import with respect to his first-degree assault sentence or was otherwise erroneous and no fault of his own. *See Anderson, supra; compare id. with Diaz v. Holder,* 136 Fed.Appx. 230, 232-233 (11th Cir. Jun. 8, 2005) ("We observed [in *United States v. Barfield,* 396 F.3d 1144 (11th Cir. 2005)] that the case did not present the issue of 'whether a defendant who was incarcerated, released in error, and then reincarcerated, should receive credit for the time . . . spent . . . at liberty.' . . . Here, the district court found that under the totality of the circumstances, Diaz was at least partially responsible for his time spent at liberty, and thus was not entitled to credit, even if it was available, because Diaz knew or should have known that his release from Louisiana state custody was not a release from federal custody, nor a satisfaction of the 15-year federal sentence, for which he had served just over one year. On this record, the district court's conclusion, based on the totality of the circumstances, including its finding concerning Diaz's knowledge or imputed knowledge, supports denying relief. Not only should Diaz have known, but also as found by the district court, his failure to discuss his situation with the authorities when he was released was unreasonable[.]"). The notion, floated by petitioner, that the Alabama DOC had some responsibility to cross state lines and actively pursue him in Georgia, after his release in early February of 2003, is ludicrous; therefore, Alabama waived nothing in this regard. In the final analysis, it is clear to the undersigned that Eldridge remained an escapee from the Alabama prison system until his return to Alabama on June 12, 2013 (as implicitly found by the Alabama Court of Criminal Appeals); therefore, he was not entitled to receive credit for the "additional" time he spent at liberty from sometime in early February, 2003, until his subsequent arrest on May 25, 2013 and return to Alabama on June 12, 2013.

[10]   The failure to prosecute Eldridge is of no moment (beyond noting that petitioner certainly benefits from not being prosecuted for escape) and petitioner has not cited a case from the Eleventh Circuit that establishes his right to a due process hearing in this regard, as nothing to which Eldridge was entitled was "taken" from him. In other words, the fact that the (Continued)

13

19-year (straight time) sentence prior to his escape and he is not entitled to any "credit" for any of the time he was at "liberty" in another state following his escape from the Alabama prison system. Accordingly, petitioner is not entitled to habeas corpus relief.

**B.      Certificate of Appealability.**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, the undersigned recommends that the Court find that reasonable jurists could not debate whether Eldridge's § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. *Compare Slack v. McDaniel*, 529 U.S. 473, 483-

---

Talladega County District Court dismissed the escape charge or that petitioner did not receive a disciplinary has no effect on his dead time or the duty to complete his sentence. Instead, all that is clear is that petitioner "robbed" Alabama's ability to ensure that he completed his first-degree assault sentence by escaping on December 9, 1999. Therefore, all that remained for the Department of Corrections to do when petitioner was returned to the Alabama prison system on June 12, 2013 was to administratively recalculate his proper end-of-sentence date related to his October 30, 1995 first-degree assault sentence (19 years straight time). (*See* Doc. 20, Exhibit C, Annex A to Administrative Regulation 437, Alabama Department of Corrections Time Computation Manual, at ¶ 7 ("Dead time includes: (a) Dates of escapes to recapture date or return date if out of state.").) To this end, the undersigned finds that the record establishes that the Alabama DOC correctly calculated petitioner's "dead time" balance and his release date of November 2, 2026. Petitioner has no one but himself to blame for his current circumstances, and his ability to seek habeas corpus relief in the Alabama courts and then seek habeas corpus relief in this Court have secured him of all the process he is due.

484, 120 S.Ct. 1595, 1603-1604, 146 L.Ed.2d 542 (2000) ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'") *with Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson*, CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States*, 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report & recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Eldridge is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal in forma pauperis.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 29th day of January, 2016.

                         s/WILLIAM E. CASSADY
                         **UNITED STATES MAGISTRATE JUDGE**